In May, 1923, the plaintiff purchased a quarter section of land from one Thon. At the time of the conveyance, the premises were occupied by one Hodson, under a written lease from the grantor, Thon. By limitation in the lease, the tenancy expired on March 1, 1924. Lessee Hodson agreed to pay Thon a cash rental of $4.50 per acre, and as security for the performance of the conditions of the contract and payment of the cash rental, the lessor reserved title to the crop. On May 5, 1923, Thon assigned to one Schulstad all his rights and interests in the lease in and for the year 1923. Thon was at the time of the assignment, a resident of Crookston, Minn., and the assignee was a resident of Reynolds, North Dakota. Plaintiff knew that the lease and all the interests of the lessor thereunder had been assigned *Page 751 
to Schulstad. Under the arrangement among these parties the plaintiff claimed no interest in the crop raised during the season of 1923.
Hodson remained in possession of the land during 1924, planting and harvesting a crop thereon. A portion of this crop he sold to the defendant at Reynolds. Thereafter the plaintiff, claiming that title to all the crop was reserved in himself as security for the payment of rent, demanded the grain delivered by Hodson to the defendant, and the demand being refused, this action resulted. The trial court held that under the arrangement between the plaintiff and Hodson for the farming of the land in 1924 there was no reservation of title to the crop, that the lease was oral and without stipulations other than the agreement on the part of Hodson to pay a cash rental of $3.75 per acre.
It was the contention of the plaintiff in the trial court, and is here, that the plaintiff and Hodson intended to and did mutually agree that the written lease, which had been executed by Hodson and Thon, should continue in force and measure the rights of the parties in all particulars except as to the cash rental which was reduced from $4.50 to $3.75 per acre.
Judgment was entered in favor of the defendant dismissing the action, and from that judgment this appeal is prosecuted. The action was tried to the court by stipulation and findings of fact and conclusions of law were duly made.
It is the contention of the plaintiff that the evidence is wholly insufficient to support the findings of the court upon the controlling question of fact; that the evidence clearly establishes an agreement between plaintiff and Hodson to recognize, as binding upon them both, the lease under which Hodson farmed the premises in 1923; and that inasmuch as title to the crop was reserved in that lease as security for the payment of the cash rental, the defendant became guilty of conversion when, upon demand, it refused to deliver the grain which it purchased from the lessor.
The plaintiff further contends that when he purchased the land from Thon he became entitled to "all the rights, duties, and obligations possessed by Thon" and that in legal effect plaintiff was substituted "as landlord under such lease in the place of Thon." Plaintiff then cites, *Page 752 
Martin v. Royer, 19 N.D. 504, 125 N.W. 1027, and § 5345, Comp. Laws 1913, as follows:
"A person to whom any real property is transferred or devised upon which rent has been reserved, or to whom any such rent is transferred, is entitled to the same remedies for recovery of rent, for nonperformance of any of the terms of the lease or for any waste or cause of forfeiture as his grantor or devisor might have had." Plaintiff says that "The law, in the absence of a new contract and in the event of the tenant continuing his possession and cultivation, presumes the renewal or continuance of the former contract, in the absence of evidence overcoming thatpresumption;" quoting from Wadsworth v. Owens, 21 N.D. 255, 130 N.W. 932. It is then said that the burden is on the defendant to offer evidence to overcome the presumption that the old lease continued in force and the defendant having failed in that regard, the presumption prevails and the terms of the old lease govern, except as to the rent. We are referred to § 6094, Comp. Laws 1913, which reads:
"If a lessee of real property remains in possession thereof after the expiration of the hiring and the lessor accepts rent from him the parties are presumed to have renewed the hiring on the same terms and for the same time, not exceeding one year."
It is then urged that the lessor has the option to treat the tenant who holds over as a trespasser, or as a tenant on the terms of the former lease, citing, to that effect, Merchants State Bank v. Ruettell, 12 N.D. 519, 97 N.W. 853. The conclusion is thus reached that Hodson held according to the former lease.
1. The plaintiff testified that sometime in the fall of 1923, or prior to March 1, 1924, he had a conversation with Hodson with reference to farming the land in 1924; as to such conversation, the testimony of the plaintiff is as follows: "I wanted to rent him the entire half section, but I could not persuade him to take more than 160 acres. He said, if conditions were right, in the spring, that he might take a small portion, forty acres or so more, but that was all he would decide to operate at that time. Nothing more (was said) except the terms of the rent was reduced somewhat. He was to pay $3.75 per acre instead of $4.50." Reduced to narrative form, his testimony is as follows: "There was no conversation between Hodson and lessor about changing the terms of *Page 753 
this lease, except as to the cash rent." On cross-examination, plaintiff testified: Q: "There was no different arrangement made at that time?" A: "Well he was to go ahead and handle the 160 acres on that basis." Reduced to narrative form his testimony on cross-examination continues: "My intention when I went to the farm was to look it over and to have a talk with Hodson. Hodson already had the lease and it did not expire until March 4, 1924. Mr. Hodson was still on the place under the Thon lease. I don't remember whether there was anything said about the lease that he was working under at the time I had the conversation with Hodson in 1923. I remember changing or reducing the price from $4.50 to $3.75. It was sometime between the first of October and March. When I talked with him in the spring of 1924, I wanted him to rent the half section; Hodson said he would go ahead the same as he had been doing and if conditions were right he would take some more of it, which he did. We made a definite agreement as to the rental when I saw him at the farm sometime between October and March. When I talked with Hodson I recall no conversation about plowing; it was a cash rental proposition. I agreed to rent the land to him for $3.75 per acre and no further arrangements were made. At that time I did not intend to make any claim for the crop so long as he was paying the cash rent. It was to come out of the crop." On redirect examination, the plaintiff testified that he asked Thon if he had security for his rentals and Thon told him he had security on the crop until the rent was paid. "At the time I made the contract with Hodson, I did not say anything about that; I did not say anything about writing up a contract as I recall it. I did not say anything to Mr. Hodson to secure the crop until the rent was paid."
The lessee Hodson testified as follows: "I had a verbal contract of lease with Vincent; he agreed to let me have the land for $3.75 per acre for the quarter. That was all I rented from him at the time. It was a cash rental. I do not remember that there were any other terms or conditions made except as to the payment of a cash rental. Nothing was said about the kind of grain to be put in or the control of putting it in; I do not remember that anything was said about the lease I had for the prior year 1923, at the time I had this talk with the plaintiff. We agreed on the price. Nothing that I remember was said except that I would farm the quarter at $3.75 per acre. When he was out to see me, *Page 754 
he spoke about making out a written contract but he did not have the time. He was in a hurry to go home as I remember it. That was about all that was said. I said he could draw up a written contract any time he would want to draw up one."
A son of the lessee who claimed the he was present during the conversation, testified in substances as follows: "I heard father say to Vincent that he would take the place for 1924, and that he would give him so much, but I did not hear him say what he would give; and when he (Vincent) left, he said something about a contract. He said he would be back later on."
The foregoing, we think, fairly presents the testimony upon the subject of the contract between the plaintiff and his tenant Hodson. The trial court concluded that the parties had not adopted as binding on them the terms of the old lease. That lease had expired; at the time when the premises were conveyed to the plaintiff the lease and the lessor's rights thereunder, had been assigned to one Schulstad. Of this fact plaintiff admits he had knowledge. Consequently, he claimed no interest whatever, in the crop raised in 1923.
2. Plaintiff testifies explicitly that he went out to the farm and arranged with Hodson to lease the land for the season of 1924; and that he made the agreement sometime between October, 1923 and March, 1924. The old lease expired on March 4, 1924. It appears, therefore, that when plaintiff and Hodson agreed that the latter should farm the land in 1924, the old lease was still in force. There was no holding over the term, within the provisions of § 6094, supra, with a resulting renewal of the old lease for another year. Neither does § 5345, supra, have any application for the very obvious reason that when the grant was made to plaintiff, the grantor had transferred all his rights under the lease to another person, and of this transfer the plaintiff had full knowledge. Plaintiff, as grantee of the lessor, never did and does not now claim any rights by virtue of the relationship of landlord and tenant which subsisted between his grantor and Hodson at the time of the conveyance to him of the land on which the crop was raised. He claims by virtue of an independent contract with Hodson whereby he alleges that they mutually agree to adopt the old and then existing lease as the measure of their rights and obligations in all particulars except that which related to the amount of the cash rental. *Page 755 
Plaintiff certainly never had the right to treat Hodson as a trespasser. He was on the land pursuant to an agreement which the new owner says he made with him, prior to the expiration of the original lease. He proved such an agreement himself, but, in the view of the trial court, he failed utterly to prove that the terms of the old lease were incorporated in the new.
The trial court saw and heard the witnesses. This is not a case triable anew. It is an action at law properly triable to a jury. The findings of the trial court are presumed to be correct unless clearly opposed to the preponderance of the evidence. Gotchy v. North Dakota Workmen's Comp. Bureau, 49 N.D. 915, 194 N.W. 663. We are satisfied that the findings and conclusions of the trial court are justified under the evidence. The testimony of the plaintiff is somewhat vague; he nowhere specifically states that the lessee agreed to farm the land upon the terms and conditions stipulated in the old lease. The inference is fairly warranted from all the testimony that the old lease was not in the contemplation of the parties at the time; that in fact, it was the intention of the plaintiff to prepare a new lease.
The conclusion follows that there was no reservation of title to the crop as security for the payment of the cash rental, and that the lessee had a right to sell, and the defendant the right to purchase, the crop raised during the season of 1924. There was no conversion.
The judgment of the trial court is affirmed.
CHRISTIANSON, Ch. J., and BURKE, BIRDZELL, and NUESSLE, JJ., concur. *Page 756